**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JUST IN TIME SUPPLIER, INC., <br><br> Plaintiff, <br><br> v. <br><br> SIOUX HONEY ASSOCIATION COOPERATIVE, <br><br> Defendant. | Case No.: 18cv856-MMA (JLB) <br><br> **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** <br><br> [Doc. No. 4] |

On April 2, 2018, Plaintiff Just In Time Supplier, Inc. ("Plaintiff" or "Just In Time") filed this action for violation of California Civil Code § 1738.10, *et seq.*, breach of contract, and breach of the implied covenant of good faith and fair dealing in the San Diego County Superior Court. Doc. No. 1-2 ("Compl."). Defendant Sioux Honey Association Cooperative ("Defendant" or "Sioux Honey") removed this action to this Court on May 3, 2018. Doc. No. 1. Presently before the Court is Defendant's Federal Rule of Civil Procedure 12(b)(6) motion to dismiss Plaintiff's Complaint for failure to state a claim upon which relief may be granted. Doc. No. 4-1 ("MTD"). Plaintiff opposes dismissal [Doc. No. 6 ("Oppo.")] and Defendant replies [Doc. No. 7. ("Reply")]. The Court found the matter suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1.d.1. Doc. No. 8. For the reasons set forth below, the Court **GRANTS** Defendant's motion.

## BACKGROUND

A. *Allegations in the Complaint*[1]

On approximately December 1, 1998, Plaintiff's predecessor in interest, New A.G.E. Marketing, Inc., and Defendant entered into a written Brokerage Agreement (the "Agreement"). Compl., ¶ 9. Pursuant to the agreement, Plaintiff agreed to "provide exclusive broker and sales agent services concerning Sioux Honey's business accounts with Costco U.S.A., Costco Canada, [] Sam's Wholesale Clubs, and Cost-U-Less" and in return Defendant "would pay Plaintiff a commission of 5% on net sales of Defendant's honey to the indicated businesses." Compl., ¶ 11. "The Agreement further provides for a term of one (1) year, with automatic renewal each year thereafter for successive terms of one (1) year. Either party may terminate the Agreement at any time, so long as ninety (90) days prior written notice was provided. Additionally, termination of the Agreement does not release the liability of Defendant to pay Plaintiff all commissions on orders and contracts previously earned by Plaintiff." Compl., ¶12 (citations omitted). In approximately August of 2001, the parties agreed in writing that Plaintiff would also be the exclusive broker and sales agent for Defendant's sales to 7-Eleven stores on the same terms (the "2001 Addendum"). Compl., ¶ 13. Additionally, Plaintiff alleges it "had discussions with warehouse stores other than Sam's Club and Costco about bringing their business to Defendant" and that Defendant "agreed that should Plaintiff ever successfully obtain warehouse business with companies other than Sam's Club and Costco, Defendant . . . would also pay Plaintiff 5% of sales on such new warehouse business." Compl., ¶ 15. As of the filing of this Complaint, neither party has terminated the Agreement. Compl., ¶ 26.

---

[1] Because this matter is before the Court on a 12(b)(6) motion to dismiss, the Court must accept as true the allegations set forth in the operative complaint. *See Hosp. Bldg. Co. v. Trs. of Rex Hosp.*, 425 U.S. 738, 740 (1976).

In January 2011, May 2011, June 2011, and May 2013, Defendant allegedly breached the Agreement by unilaterally reducing the commission on Defendant's sales of its honey to Sam's club from 5% to 4%, then to 3.5%, then to 3%, and finally down to 2.5%. Compl., ¶¶ 16-19. Plaintiff alleges it "never agreed to a reduced commission rate, and protested each reduction unilaterally made." Compl., ¶ 20.

Plaintiff also alleges that sometime before September 2016, Defendant "secretly entered into negotiations with Sam's Club" and agreed that "rather than sell Sam's Club honey under Defendant's brand label, Defendant would sell honey to Sam's Club under Sam's Club's own private label [(the "Private Label Contract")]. Compl., ¶ 21. "Plaintiff did not find out about . . . [the] Private Label Contract until approximately 2-3 months before the private label sales began." Compl., ¶ 22. After entering into the Private Label Contract with Sam's Club, Defendant stopped paying Plaintiff commissions on any of Defendant's sales of its honey to Sam's Club or any third-parties. Compl., ¶ 25. Plaintiff contends that the Agreement it has with Defendant states that Plaintiff is Defendant's exclusive sales agent for Defendant's honey to Sam's Club and is entitled to 5% commission on all sales of such honey. Compl., ¶ 23. As a result, Plaintiff contends that it is entitled to 5% of sales of Defendant's honey to Sam's Club regardless of whether it was sold under Defendant's label or Sam's Club's private label. Compl., ¶ 24.

## B. *Iowa State Court Action (Case Number EQCV176396)*[2]

On December 13, 2016, before the Complaint in this action was filed, Sioux Honey filed a Petition in the Iowa District Court for Woodbury County: *Sioux Honey Association, Cooperative v. Just In Time Supplier, Inc., et al.*, LACV 173510. Doc. No. 4-2 ("RJN"), Exhibit 1. In the Petition, Sioux Honey alleges a cause of action for unjust enrichment resulting from Sioux Honey's mistaken payment of 5% commission instead

---

[2] The Court **GRANTS** Defendant's request to judicially notice the December 13, 2016 Petition, July 7, 2017 First Amended Petition, August 15, 2017 Answer, and the Docket Sheet for *Sioux Honey Association, Cooperative v. Just In Time Supplier, Inc., et al.*, Case No. EQCV176396. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006).

3

18cv856-MMA (JLB)

of the agreed upon 2.5% commission to Just In Time from December 2015 to September 2016, amounting to $182,526.05.³ *Id.* at 5. On July 7, 2017, Sioux Honey amended the Petition to add causes of action for breach of contract and breach of implied covenant of good faith and fair dealing based on the same factual allegations. RJN, Exhibit 2. Just In Time answered the First Amended Petition on August 15, 2017, raising two affirmative defenses but no counterclaims. RJN, Exhibit 3.

## **LEGAL STANDARD**

A Rule 12(b)(6) motion tests the legal sufficiency of the claims made in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). However, plaintiffs must also plead "enough facts to state a claim to relief that is plausible on its face." Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard demands more than "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (20009) (internal quotations omitted). Instead, the complaint "must contain allegations of underlying facts sufficient to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In reviewing a motion to dismiss under Rule 12(b)(6), courts must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). The court need not take legal conclusions as true merely because they are cast in the form of factual allegations. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987).

---

³ Just In Time alleges Sioux Honey "temporarily resumed paying [Just In Time] a full 5% commission on sales to Sam's Club" from December 2015 to September 2016. Compl., ¶ 34. Sioux Honey alleges its "electronic accounting system mistakenly began calculating [Just In Time's] commission at a rate of 5% instead of . . . 2.5%." RJN, Exhibit 1, ¶ 13.

4

Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

Where dismissal is appropriate, a court should grant leave to amend unless the plaintiff could not possibly cure the defects in the pleading. *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009).

## DISCUSSION

Defendant argues all three of the causes of action filed in this lawsuit are compulsory counterclaims that should have been filed in the Iowa state court case.[4] MTD at 12. "The Ninth Circuit has held that 'Federal courts will not permit an action to be maintained where the claims asserted should have been brought as a compulsory counterclaim in an earlier action.'" *Swain v. CACH, LLC*, 699 F. Supp. 2d 1117, 1124 (9th Cir. 2009) (quoting *In re Crown Vantage, Inc.*, 421 F.3d 963, 973 n.7 (9th Cir. 2005)). The question of whether Plaintiff's causes of action are compulsory counterclaims which should have been pleaded in the Iowa state court proceeding is a question of state law. *Pochiro v. Prudential Ins. Co.*, 827 F.2d 1246, 1249 (9th Cir. 1987). The earlier action was brought in Iowa state court; accordingly, Iowa law applies.

"Under Iowa Rule of Civil procedure 1.241, a party who fails to raise a compulsory counterclaim loses the claim." *Schaefer v. Putnam*, 841 N.W.2d 68, 74 (Iowa 2013) (citing Iowa R. Civ. P. 1.241). Under Iowa law, "[a] compulsory counterclaim is a claim that arises out of the same transaction or occurrence that is the basis of the opposing party's claim if the following are true: (1) the claim is then matured, (2) the claim is not the subject of any other pending action, (3) the claim is held by the pleader against the opposing party, and (4) the claim does not require the presence

---

[4] Sioux Honey also raises arguments under the *Colorado River* doctrine and the statute of limitations for each cause of action. MTD at 7. In the event the Court dismisses as time-barred Just In Time's first cause of action, Sioux Honey seeks reasonable attorneys' fees and costs. *Id.* at 29. However, in light of the Court's finding that all of Plaintiff's claims are compulsory counterclaims that should have been raised in Iowa state court, the Court declines to address Sioux Honey's remaining arguments.

5

18cv856-MMA (JLB)

of necessary parties over whom the court cannot acquire jurisdiction." *Id.* at 74-75 (citing Iowa R. Civ. P. 1.241; *Harrington v. Polk Cnty. Fed. Savs. & Loan Ass'n of Des Moines*, 196 N.W.2d 543, 545 (Iowa 1972)). This rule is based on Federal Rule of Civil Procedure 13, which provides that a counterclaim is compulsory if it arises out of the same transaction or occurrence and does not require adding another party over whom the court cannot acquire jurisdiction. *See In re Estate of Hoelscher*, 249 Iowa 444, 449 (1958); *see also Graham v. Baker*, 447 N.W.2d 397, 401 (Iowa 1989) (indicating that Federal Rule of Civil Procedure 13 is analogous to Iowa's compulsory counterclaim rule); Fed. R. Civ. P. 13(a). As such, "the interpretation by Federal courts of the Federal rule is highly persuasive." *Id.* at 450.

Here, Sioux Honey's claims in Iowa state court relate to the Agreement at issue in this action and the same reduced compensation rates. *Compare* RJN, Exhibit 2, *with* Compl. Nonetheless, Just In Time asserts that this action does not arise out of the same transaction or occurrence that is the basis of Sioux Honey's claim in Iowa state court.[5] Oppo. at 10-18. To determine whether a claim arises out of the same transaction or occurrence that is the basis of the opposing party's claim, the court asks "whether there is any logical relation between the plaintiff's claim and the counterclaim." *Schaefer*, 841 N.W.2d at 75 (citing *Harrington*, 196 N.W.2d at 545).

As discussed previously, Sioux Honey's complaint in Iowa state court raises three causes of action: (1) unjust enrichment; (2) breach of contract; and (3) breach of the covenant of good faith and fair dealing. RJN, Exhibit 2. Each of these causes of action are premised on the 1998 Agreement between the parties, subsequent reductions in

---

[5] Just In Time also argues that failure to assert a compulsory counterclaim is not a proper basis for bringing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Oppo. at 16. The Court is unpersuaded by this argument. *See Nehrlich v. JL-TW Corp.*, No. 15-cv-00521-BAS (BLM), 2016 WL 127584, at *2-5 (S.D. Cal. Jan. 11, 2016) (granting the defendant's motion to dismiss the plaintiff's complaint on the grounds that the claims should have been raised as compulsory counterclaims in an Ohio state court action).

commission rates, and the computer glitch resulting in Sioux Honey paying Just In Time 5% commission from December 2015 to September 2016. *Id.*

Just In Time's Complaint in this Court raises three causes of action: (1) violation of California Civil Code § 1738.10, which requires contracts between a manufacturer and distributer to be written and contain various mandatory terms, including the rate of commission, the territory for the representative, the amount of chargebacks, and any exceptions; (2) breach of contract; and (3) breach of the covenant of good faith and fair dealing. Compl. These causes of action are also premised on the 1998 Agreement between the parties, the subsequent reductions in commission rates, and the computer glitch resulting in Sioux Honey paying Just In Time 5% commission from December 2015 to September 2016. *Id.* Just In Time contends its causes of action are based on the Private Label Contract between Sam's Club and Sioux Honey and independent California statutory rights. Oppo. at 12-16. Therefore, Just In Time asserts that this Complaint does not arise from the same transaction or occurrence. *Id.* Sioux Honey contends that Just In Time would have no causes of action based solely on the Private Label Contract, and that its claims are therefore based upon the 1998 Agreement. Reply at 5-6.

The Court finds a clear logical relation between Sioux Honey's claims in Iowa state court and Just In Time's claims in this Court. *See Harrington*, 196 N.W.2d at 545 (finding that claims in two actions were logically related because they both arose from the same agreement); *see also Bankcard Sys. v. Miller/Overfelt, Inc.*, 219 F.3d 770, 773 (8th Cir. 2000) (finding claims logically related and arising from the same transaction or occurrence where both involve facts and circumstances of the making and enforcing of the same contract, even where one claim relies heavily on events occurring after initial interactions). Both actions assert claims for breach of contract and the covenant of good faith and fair dealing relating to the Agreement and subsequent reductions in commission. Just In Time's California Civil Code § 1738.10 claim arises from the same transaction or occurrence because it is logically related to Sioux Honey's original breach of contract claim in Iowa state court as it identifies the requirements of the contract

7

pursuant to California Civil Code § 1738.10. *See* Cal. Civ. Code § 1738.13; *see also Tullos v. Parks*, 915 F.2d 1192, 1194-95 (8th Cir. 1990) (finding a claim under Delaware law to be a compulsory counterclaim to claims arising under Arkansas law and federal law). Moreover, Just In Time's claims regarding the Private Label Contract are logically related to Sioux Honey's unjust enrichment claim as it counters the amounts Sioux Honey alleges Just In Time owes to Sioux Honey. *See Bankard Sys.*, 219 F.3d at 77. Therefore, the claims raised by Just In Time in this Court arise out of the same transaction or occurrence that is the basis of Sioux Honey's claims in Iowa state court.

Moreover, the claims in this action are mature because Just In Time claims entitlement to a legal remedy resulting from Sioux Honey's alleged failure to pay commissions under the Agreement in violation of California's Independent Wholesale Representative Contractual Relations Act of 1990, in breach of contract, and in breach of the implied covenant of good faith and fair dealing. *See Sky View Fin., Inc. v. Bellinger*, 554 N.W.2d 694, 697 (Iowa 1996) (stating that a counterclaim is mature when the party possessing the claim "is entitled to a legal remedy"); *see also Schafer*, 841 N.W.2d at 75 (same). More specifically, Just In Time claims it was injured the moment Sioux Honey allegedly unilaterally reduced Just In Time's commission and continued to be injured by each subsequent reduction and by Sioux Honey's decision to cease paying commissions to Just In Time for any of its sales. *See* Compl; *see also Hettinger v. Farmers & Merchants Sav. Bank*, 436 N.W.2d 377, 379 (Iowa Ct. App. 1988) (stating that a claim matures when the claimant sustains an actual loss and is entitled to a legal remedy).

The other elements of a compulsory counterclaim are also met. This action was not pending at the time Sioux Honey filed its petition in Iowa state court, the claims are held by Just In Time against Sioux Honey, and this action does not require the presence of parties over whom the Iowa state court could not acquire jurisdiction because Just In Time and Sioux Honey are already parties to both actions. *See Schafer*, 841 N.W.2d at 75.

Sioux Honey also argues that Just In Time's Complaint is not a compulsory counterclaim because there has not yet been a final judgment. *See* Oppo. However, Iowa's compulsory counterclaim rule is designed to avoid a multiplicity of suits. *Associated Grocers of Iowa Coop., Inc. v. West*, 297 N.W.2d 103, 108 (Iowa 1980). Thus, the Iowa Court of Appeals has held that a defendant's election to treat a plaintiff's suit as a separate cause of action until a judgment is rendered in the first suit precludes the defendant from relying on the compulsory counterclaim rule as a bar to the plaintiff's action. *Cummings v. Schafer*, 511 N.W.2d 888, 889 (Iowa Ct. App. 1993). As such, Just In Time's Complaint may still be considered a compulsory counterclaim even though the Iowa state court action is still pending. *See id.*

Accordingly, Just In Time's claims for violation of California Civil Code § 1738.10, e*t seq.*, breach of contract, and breach of the implied covenant of good faith and fair dealing are compulsory counterclaims to the Iowa state court case. The Court consequently declines to maintain this action on the grounds that the claims Just In Time makes could and should have been litigated in the pending Iowa state court proceedings.

## CONCLUSION

Based on the foregoing, the Court **GRANTS** Sioux Honey's motion and dismisses Just In Time's Complaint without prejudice, subject to asserting its claims in Iowa state court. The Clerk of Court is instructed to close this case and enter judgment accordingly.

**IT IS SO ORDERED**.

Dated: June 14, 2018

Hon. Michael M. Anello
United States District Judge